## John Peterson v. William R. Fullerton.

1. Witnesses—*Their Credibility a Question 'for the Jury.*—The question of the credibility of witnesses is for the jury.

2. Principal and Agent—*Power of Agent to Collect a Debt and Release a Mortgage Before Maturity.*—Where an agent has been for years in the habit of loaning his principal's money, and receiving money on loans before due and generally transacting his principal's business as he saw fit, and the parties borrowing have had no dealings with or knowledge of the principal, the agent must be held to have authority to receive payment of a note and discharge a mortgage lien before maturity.

Assumpsit, on a promissory note. Appeal from the Circuit Court of Peoria County; the Hon. Nicholas E. Worthington, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 27, 1903.

Arthur Keithley, attorney for appellant.

Stevens, Horton & Abbott, attorneys for appellee.

Mr. Presiding Justice Brown delivered the opinion of the court.

This suit was commenced in the Circuit Court of Peoria County upon the following promissory note:

"$1,100.                    Peoria, Ill., Aug. 1st, 1892.

Five years after date, for value received, I promise to pay to the order of George T. Gilliam, the principal sum of eleven hundred dollars, with interest thereon at the rate of six per cent per annum, payable semi-yearly, to wit: On the first day of February and August in each year, until said principal sum is fully paid. Both principal

and interest are payable at his office in Peoria, Ill. The
several installments of interest aforesaid for said period- of
five years was further evidenced by ten interest notes or
coupons of even date herewith. The payment of this note
is secured by mortgage of even date herewith, on real
estate in Mason county, Ill.

WM. R. FULLERTON."

The defendant pleaded the general issue and payment,
but upon the trial reliance was had entirely upon the latter
plea. The trial resulted in a verdict and judgment for
defendant. The plaintiff appeals.

The facts as they appear from the evidence, and as found
by the jury, are that Fullerton, in 1892, was the owner of
one hundred and twenty acres of land in Mason county,
and desired to make a loan thereon. He was referred by
one Mitchell to George T. Gilliam, who resided in the city
of Peoria. His application to George T. Gilliam resulted
in securing a loan, for which he executed the note before
mentioned, and secured the payment of the same by a
mortgage upon the Mason county land. It will be·
observed the note was dated August 1, 1892, and matured
five years after date. The interest was evidenced by ten
interest coupons attached to the note. The evidence shows
that Gilliam was and had been, since the early '80's, hand-
ling the plaintiff's money. It shows that he dealt with the
money as he pleased. According to his own statement, he
made loans and accepted re-payment, changed loans, col-
lected interest, received money on loans before due, and
placed it again, and generally transacted the business as he
saw fit. Some time after the making of the note in con-
troversy, he indorsed the same and delivered it, with the
mortgage, to Peterson, and from that date, so far as the
evidence discloses, it had remained in Peterson's posses-
sion. In July, 1895, Fullerton had an opportunity to sell
forty acres of the land, and secured a loan of $1,000 upon
the remaining eighty. He called upon Gilliam, and Gil-·
liam proposed to receive payment of the note, and release
him from any further liability. The money was paid to
Gilliam, and he executed a release of the mortgage in July,
1895, and delivered it to Fullerton. He did not deliver the

note or mortgage at that time, but promised to send them to Fullerton soon. Fullerton recorded the release, and the matter passed from his mind. Fullerton had known no one but Gilliam in the transaction, and had no intimation that any other person held the note and mortgage. It was payable at Gilliam's office in Peoria. From the time the loan was made to the time of its repayment Gilliam had given him notice of the time for the payment of the semi-annual interest; Fullerton would send a draft, and in time would receive back the coupon. From the time of the re-payment of the note, in 1895, to the 30th or 31st day of December, 1900, Fullerton had heard nothing about the note or the mortgage. The whole matter had passed from his recollection. Three years and a half after the maturity of the note, about December 30 or 31, 1900, he received a letter from Peterson, as follows:

"PEORIA, ILL., December 29th, 1900.
MR. W. R. FULLERTON:
Dear Sir: This is to notify you that Mr. George T. Gilliam has sold and assigned your note and mortgage to me, some time ago. Said Gilliam has been allowed to collect any interest thus far, but from now on you will please deal directly with me, as I hold that note and mortgage. There is now due interest on said note since February 1st, 1900. The principal has been due for some time, as you know. Please let me hear from you immediately, so that I will know when you intend to pay.
Yours truly,
JOHN PETERSON."

Peterson gave no notice to Fullerton of the maturity of the note, or of interest due from time to time, either during the three years it had run after its payment, or the three years and a half after its maturity. The evidence shows that Gilliam handled Peterson's money as he saw fit. He made loans, and, as he says, sometimes did not turn them over to Peterson. They were repaid to him, and he made other loans, and in fact handled Peterson's money as his own, and that he had authority from Peterson so to do. The evidence also shows that whenever Gilliam and Peterson had a settlement, he would pay over to Peterson

whatever appeared to be due. In fact, all the business connected with loans of Peterson's money, of many thousand dollars, was conducted by Gilliam independently of any knowledge or direction by Peterson. The evidence also shows that the money loaned to Fullerton was received by Gilliam upon a note and mortgage owned by Peterson, not due, but cashed and payment accepted by Gilliam without the knowledge of Peterson, and a portion of the money was loaned by Gilliam to Fullerton, without consulting Peterson with reference thereto. The testimony of Gilliam, who was a witness for the defendant, shows that late in the year 1898, or early in the year 1899, in making one of his settlements with Peterson, he told him that the Fullerton loan was one he would have to take care of himself. Thereafter Gilliam paid Peterson from two to four semi-annual installments of interest on the loan, which were accepted by Peterson and by him personally indorsed upon the note.

It is true the material parts of the testimony of Gilliam which are necessary to constitute a defense, are contradicted by Peterson. But the question of the credibility of witnesses is for the jury. The jury and the trial judge saw the witnesses, and had superior opportunities to determine the weight to be given to their testimony. The jury and judge both gave credence to the testimony of Gilliam, and we find no justifiable reason for disturbing the issues of fact as found by the jury and approved by the trial judge in overruling the motion for a new trial.

The evidence warranted the jury in arriving at the conclusion that Gilliam had authority from Peterson to receive payment of the note and to discharge the lien and debt. The jury was also justified in finding from the evidence that Peterson accepted and treated Gilliam as his debtor, instead of Fullerton, from the latter part of 1898 or the early part of 1899.

The trial court committed no error in passing upon the instructions or in the admission or rejection of evidence. The judgment of the Circuit Court administers substantial justice to the parties and will be affirmed.